UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HASSAN SHAMDEEN, | Case No. C07-164MJP |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| MICHAEL MUKASEY, et al., | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Dkt. No. 13.) After reviewing the motion, Defendants' response (Dkt. No. 14), Plaintiff's reply (Dkt. No. 15), and all papers submitted in support thereof, the Court GRANTS Plaintiff's motion.

**Background**

Plaintiff Hassan Shamdeen is an Iraqi Kurd and has been a Legal Permanent Resident since May 18, 1996. On February 24, 2004, Mr. Shamdeen filed an application for naturalization. (Dkt. No. 13-2, Ex. B.)  On August 30, 2004, and November 1, 2004, the United States Citizen and Immigration Services (USCIS) interviewed Mr. Shamdeen. (Langlais Decl. ¶ 4.) At his interview, Mr. Shamdeen was informed that he met the residence and good moral character requirements for naturalization, and that his disability-based waiver for English and civics was approved. (Compl. ¶ 29.)  As of March 2, 2007, when he filed his complaint, USCIS had not issued a decision on his naturalization application.

Mr. Shamdeen's claims were presented with fourteen other plaintiffs in an amended

ORDER — 1

1   Complaint for Naturalization, Declaratory Relief and Mandamus, pursuant to 8 U.S.C. § 1447(b).

2   The Amended Complaint requested the following relief:

> Plaintiffs request that the Court grant their naturalization applications, give them their
> oaths of citizenship and order Defendant CIS to prepare and provide certificates of
> naturalization.  In the alternative, Plaintiffs request that the Court remand the cases
> to CIS with instructions that the applications be adjudicated within 30 days of the
> order.

(Dkt. No. 1 at 3.)  In a later section of the complaint entitled "Request for Relief," Plaintiffs ask

the Court to, among other things:

> Grant the applications of plaintiffs, and give the plaintiffs their oath of citizenship, or,
> in the alternative, order Defendant CIS to administer oaths of citizenship to plaintiffs
> within 10 days of the order.

(Dkt. No. 1 at 15.)  On Defendants' motion, the Court severed plaintiffs' claims and created

fifteen discrete cases.

Mr. Shamdeen, the first named plaintiff in the original action, retained Case No. C07-

164MJP.  On April 23, 2007, the Court ordered Defendants to show cause why the Court should

not grant Mr. Shamdeen's application for naturalization.  (Dkt. No. 11.)  Defendants responded

to the order with a motion to remand. (Dkt. No. 12.)  In that motion, the Government argued that

the Court should remand the matter to USCIS for adjudication of the application within thirty

days because the FBI recently completed its "name check" of Mr. Shamdeen.  On July 24, the

Court issued an order in which it concluded that it has jurisdiction over this matter, and over

Plaintiff's objection, granted the Government's motion to remand with instructions to adjudicate

Mr. Shamdeen's application within thirty days. (Dkt. No. 16.)  On August 9, USCIS issued the

oath and certificate of citizenship to Mr. Shamdeen. (See Dkt. No. 18.)

Plaintiff now brings this motion for attorneys' fees and costs pursuant to the EAJA.

### Analysis

Under the EAJA, a litigant who has brought a civil suit against the United States is entitled

to attorney's fees and costs if: (1) he is the prevailing party in the matter; (2) the government fails

to show that its position was substantially justified or that special circumstances make an award

ORDER — 2

1    unjust; and (3) the requested fees and costs are reasonable.  28 U.S.C. § 2412(d)(1)(A).

2    Additionally, the application for fees must be filed within 30 days of a final judgment.  Defendants

3    do not challenge Plaintiff's motion as untimely.

4    **I.      Prevailing Party**

5           Two factors define "prevailing party" under the EAJA.  Carbonell v. INS, 429 F.3d 894,

6    898 (9th Cir. 2005).  Plaintiff's action must have resulted in a "material alteration" in the parties'

7    legal relationship and that alteration must have been "judicially sanctioned."  Id.  A "material

8    alteration" means "the defendants were required to do something directly benefitting the plaintiff

9    that they otherwise would not have had to do."  Id. at 900.  "A party need not succeed on every

10   claim in order to prevail.  Rather, a plaintiff prevails if he has succeeded on any significant issue in

11   litigation which achieved some of the benefit [he] sought in bringing suit."  Id. at 901 n.5 (internal

12   citations and quotation marks omitted).  Mr. Shamdeen sought the following relief in his

13   complaint: (1) that the Court grant his naturalization application; or (2) that the Court order

14   USCIS to adjudicate his application and administer an oath of citizenship.  The Court did not

15   award either of those forms of relief.  But alternatively, Mr. Shamdeen requested that the Court

16   "remand the case[] to [US]CIS with instructions that the applications be adjudicated within 30

17   days of the Order." (Am. Compl. at 3.)  The Court did remand with instructions to adjudicate

18   within thirty days and Mr. Shamdeen was quickly naturalized.  Mr. Shamdeen thus achieved a

19   material alteration in his legal relationship with Defendants when his application was finally

20   adjudicated.[1]  See Al-Ghanem v. Gonzales, 2:06-CV-320TS, 2007 U.S. Dist. LEXIS 8900, at *6-

21

22   _____

23          [1]      The Government suggests that Mr. Shamdeen is not a prevailing party because he
     opposed the Government's efforts to remand this matter back to USCIS.  But the Court's decision
24   to remand over Plaintiff's objection does not strip his of prevailing party status.  See Al-Ghanem v.
     Gonzales, 2:06-CV-320TS, 2007 U.S. Dist. LEXIS 8900, at *6-7 (D. Utah Feb. 7, 2007) ("The
25   Court looks to the substance of the litigation to determine whether an applicant has substantially
     prevailed in its position, and not merely the technical disposition of the case or motion.") (quoting
26   Kopunec v. Nelson, 801 F.2d 1226, 1229 (10th Cir. 1986).  Mr. Shamdeen is still a prevailing party,
     even though the Government adopted his litigation position during the litigation.
27

1    7 (D. Utah Feb. 7, 2007).

2         The material alteration in the relationship between the parties must also be stamped with

3    some "judicial imprimatur." Carbonell, 429 F.3d at 901.  Relief achieved through a voluntary

4    change that was simply prompted by the lawsuit does not convey prevailing party status on the

5    plaintiff.  See Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res., 532 U.S.

6    598, 605 (U.S. 2001) (rejecting the "catalyst theory" on the ground that it lacks the critical factor

7    of "judicial sanction").  Here, USCIS did not voluntarily adjudicate Mr. Shamdeen's application,

8    but was compelled to do so by the Court.  When Mr. Shamdeen brought this action under §

9    1447(b), the Court assumed exclusive jurisdiction and had two options for disposition of the

10   matter: (1) to determine the matter on the merits; or (2) to remand the matter, with appropriate

11   instructions, to USCIS to determine the matter. 8 U.S.C. § 1447(b); United States v. Hovsepian,

12   359 F.3d 1144, 1161 (9th Cir. 2004).  On July 24, 2007, the Court remanded Mr. Shamdeen's

13   case to USCIS with explicit instructions to adjudicate the application and reserved the right to re-

14   establish jurisdiction if Defendants failed to comply with its order. (Dkt. No. 9.) Compare Chebli

15   v. Chertoff, 07-CV-10750, 2008 U.S. Dist. LEXIS 7839 (E.D. Mich. Feb 4, 2008) (denying

16   EAJA fees in § 1447(b) case where parties privately settled matter before Court held

17   naturalization hearing).  USCIS acted on Mr. Shamdeen's application at the direction of the Court

18   and would have violated a court order if it had not done so.

19        Mr. Shamdeen's success on the merits does not rely solely on the fact that USCIS

20   ultimately granted his application for naturalization; instead, his success stems from the fact that

21   USCIS adjudicated his naturalization application at all.  Section 1447(b) is "a statutory check on

22   what could otherwise amount to an infinite amount of time available to the government in which

23   to render a decision on the application." Alghamdi v. Ridge, No. 3:05cv344-RS, 2006 U.S. Dist.

24   LEXIS 68498, *16 (N.D. Fla. Sep. 25, 2006).  The Ninth Circuit has found that "[a] central

25   purpose of [§ 1447(b)] was to reduce the waiting time for naturalization applicants."  Hovsepian,

26   359 F.3d at 1163 (citing H.R. Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542

27

1   (1989) (statement of Rep. Morrison)).  At the time he filed his complaint, Mr. Shamdeen had been

2   waiting for more than two years for the Government to issue a decision on his naturalization

3   application.  Mr. Shamdeen's action put an end to the delay in processing his application and

4   forced USCIS to make a determination on his immigration status.  USCIS's discretion in deciding

5   whether to grant or deny Mr. Shamdeen's application does not transform the adjudication of that

6   application into a voluntary act. See Alghamdi, 2006 U.S. Dist. LEXIS 68498, at *17 ("Whether

7   USCIS ultimately grants or denies the application are [sic] irrelevant for determining whether a

8   plaintiff has succeeded on the merits of an action based on § 1447(b).  The sole purpose of §

9   1447(b) is to provide the applicant with a decision on the application where a decision has been

10  withheld for an unreasonable amount of time.").  Mr. Shamdeen is the prevailing party in this

11  action. See id. at *39 (finding plaintiff prevailing party where court determined that application

12  had been wrongfully delayed, scheduled hearing, issued remand order while retaining jurisdiction,

13  and where agency then naturalized plaintiff).

14  **II.  Substantially Justified**

15        A litigant may not recover fees under the EAJA if the government shows that its litigating

16  position and "the action or failure to act by the agency upon which the civil action is based" were

17  substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d);

18  see also United States v. Real Prop. at 2659 Roundhill Drive, 283 F.3d 1146, 1151 n.7 (9th Cir.

19  2002) ("The EAJA defines the 'position of the United States' as not only its litigation position in

20  the civil action, but also the government's action upon which the civil suit is based.").  "Congress

21  enacted the EAJA to ensure that individuals and organizations would not be deterred by the

22  expense of unjustified governmental opposition from vindicating their fundamental rights in civil

23  actions and in administrative proceedings." Abela v. Gustafson, 888 F.2d 1258, 1262 (9th Cir.

24  1989) (emphasis added). "[W]hen analyzing whether the Government was substantially justified in

25  a particular case, courts should consider the Government's litigating position as a whole."

26  Comm'r v. Jean, 496 U.S. 154, 161-62 (1990).  The Government bears the burden of showing

27

ORDER — 5

1    that its position was substantially justified. <u>Real Prop.</u>, 283 F.3d at 1151 n.7.

2           The government's litigation position rested on a single argument – that remand was

3    appropriate because USCIS is better equipped to adjudicate a naturalization petition.  To find that

4    the government's litigation position was substantially justified, the Court must determine that the

5    arguments had "a reasonable basis in law and fact." <u>Abela</u>, 888 F.2d at 1264.  Defendants'

6    argument that USCIS is better equipped to assess the merits of a naturalization application is

7    reasonable.

8           In its briefing, the Government does not even attempt to argue that its pre-litigation

9    conduct was substantially justified.  The Government's failure to timely act on Mr. Shamdeen's

10   underlying application was not reasonable.  Mr. Shamdeen brought this action because USCIS

11   had failed to adjudicate his naturalization petition even though he had completed his citizenship

12   interview more than two years earlier.  Although no statutory time limit governs the adjudication

13   of naturalization applications, agencies are required to conclude matters presented to them within

14   a "reasonable time." <u>See</u> 5 U.S.C. § 555(b).  Further, the applicable regulations state that "[a]

15   decision to grant or deny the application shall be made at the time of the initial examination or

16   within 120-days after the date of the initial examination of the applicant for naturalization[.]" 8

17   C.F.R. 335.3(a).  More than two years is not a reasonable amount of time to wait for the agency

18   to adjudicate the application. <u>Compare Smirnov v. Chertoff</u>, No. 06-10563-RWZ, 2007 U.S. Dist.

19   LEXIS 9598 (D. Mass. Jan. 18, 2007) (two year delay unreasonable) <u>with</u> <u>Simonovskaya v.</u>

20   <u>Chertoff</u>, 06-11745-RWZ, 2007 U.S. Dist. LEXIS 5446, at *6 (D. Mass. Jan. 26, 2007) (one day

21   delay not unreasonable).

22          In other similar cases before this Court, the Government has argued that it could not

23   adjudicate the naturalization application until the FBI completed all background checks.  The

24   Northern District of Florida found that the explanation "that background checks were necessary

25   and had to be completed before the plaintiff could be naturalized... merely restates, in a

26   conclusory manner, the necessity of completing the background check; it does not <u>justify</u> the

27

ORDER — 6

1   delay." Alghamdi, 2006 U.S. Dist. LEXIS 68498 at *43 (emphasis in original).  The Alghamdi

2   court reasoned:

3           [W]hile a reasonable person would not dispute the necessity of conducting a
            background check on an applicant for naturalization, a reasonable person would
4           require a satisfactory justification for a substantial delay in completing the background
            check.  Indeed, government agencies are required to conclude matters presented to
5           them within a "reasonable time."  See 5 U.S.C. § 555(b).  Otherwise, an applicant for
            naturalization remains in perpetual limbo and is by de facto, denied his citizenship, a
6           right that has been afforded by Congress to deserving individuals since the rise of the
            American democracy.  This is particularly true when Congress has enacted legislation
7           permitting the applicant to apply to federal district court if a decision is not rendered
            on the application with 120 days of the completion of the examination under 8 U.S.C.
8           § 1447(b).

9   Alghamdi, 2006 U.S. Dist. LEXIS 68498 at *42-43 (emphasis in original).  The Government has

10  suggested in the other cases severed from this one that the underlying delay in processing the

11  applications is justified because the FBI does not have sufficient resources to complete the

12  millions of name check requests it has received since the events of 9/11 and in the interest of

13  national security, USCIS's only recourse was to wait for the results of the name checks before

14  adjudicating the applications.  Insufficient resources to do the job that Congress has charged the

15  agency with doing does not substantially justify the delay. See Berishev v. Chertoff, 486 F. Supp.

16  2d 202, 207 (D. Mass. 2007) (noting that the Government's burden to show substantial

17  justification "cannot be borne by a general appeal to delays attributable to the FBI background

18  check process" because otherwise, "the 120-day statutory window framed by 8 U.S.C. § 1447(b)

19  would be of no effect"); Shalan v. Chertoff, No. 05-10980-RWZ, 2006 U.S. Dist. LEXIS 82795,

20  at *6-7 (D. Mass. Nov. 14, 2006); but see Deng v. Chertoff, No. C 06-7697 SI, 2007 WL

21  2600732, *1 (N.D. Cal. Sept. 10, 2007) (finding delay justified because of volume of security

22  checks conducted by agency).  The Court does not find that USCIS's delay in processing Mr.

23  Shamdeen's naturalization application was substantially justified.  And the Court does not find

24  that any special circumstances make the awarding of fees unjust.

25  **III.  Reasonable Fees and Costs**

26          Plaintiff is entitled to a "reasonable" amount of fees. 28 U.S.C. § 2412(b).  The EAJA

27

1  includes a statutory cap for attorneys' fees, unless a special factor justifies a higher rate.  28

2  U.S.C. § 2412(d)(2)(A).  Because Mr. Shamdeen's primary attorney needed specialized

3  immigration law skills to file the original complaint of fifteen plaintiffs, her efforts in originating

4  the action justify a higher market rate. See Pirus v. Bowen, 869 F.2d 536, 540-42 (9th Cir. 1989).

5  However, Defendants greatly multiplied the work on these cases by moving to sever the action

6  into fifteen distinct cases.  Because much of the work required in this matter was duplicated for

7  the multiple plaintiffs, the Court finds it reasonable to award the statutory rate of fees to any

8  hours spent modifying work product for related cases.  Hours billed by other members of

9  Plaintiff's legal team are to be compensated at the statutory rate.  Further, Plaintiff is entitled to

10  reasonable costs.  Because the Court acknowledges Plaintiff's primary attorney's immigration law

11  expertise, the Court disallows any consultation fee by an outside immigration expert.

12                                                   **Conclusion**

13         The Court GRANTS the motion for attorneys' fees.  Plaintiff is entitled to attorneys' fees

14  at the market rate for time spent on any original work in preparing this action, and attorneys' fees

15  at the statutory rate for time spent modifying original work for this action once the fifteen

16  plaintiffs in the original complaint were severed into discrete cases.  Plaintiff is also awarded

17  reasonable costs.  The parties are directed to submit a joint proposed order regarding costs and

18  fees that accords with the Court's instructions and contains documentation of costs and time

19  billed.  The proposed order shall be submitted to the Court within twenty (20) days of this order.

20         The Clerk is directed to send a copy of this order to all counsel of record.

21         Dated: February 25, 2008.

22

23

24                                          Marsha J. Pechman
                                            United States District Judge
25

26

27

ORDER — 8